O'Keefe, et ux. *v.* Altoona City Authority, et al.

Argued March 6, 1973, before President Judge Bow-man and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*T. Dean Lower,* for appellants.

*M. David Halpern,* for appellees.

Opinion by Judge Crumlish, Jr., May 21, 1973:

The sole issue which we are called upon to resolve here is whether appellants' petition for the appoint-

ment of viewers should have been refused by the Court of Common Pleas of Blair County because of the interdiction of the statute of limitations.

On March 29, 1956, by agreement and with the consent of appellants, employees of the city of Altoona (City) entered upon appellants' land and installed an underground water line and a surface manhole covering.[1] The arrangement between the City and appellants called for the City to assess damages and provide for compensation at an undetermined date. No declaration of taking had been filed nor had condemnation proceedings of any kind been instituted.

After the work was completed, neither party acted until November 5, 1971 when appellants petitioned for the appointment of viewers.[2] The City filed preliminary objections contending that this petition was barred by the statute of limitations.

After hearing, the court below sustained the preliminary objections and dismissed the petition. Hence this appeal.

It is clear that if a corporate body, clothed with the power of eminent domain, enters upon and appropriates for its own use the private property of another the landowner may treat this as a valid condemnation even though the statutorily prescribed condemnation procedure was not followed. *Rosenblatt v. Pa. Turnpike Commission*, 398 Pa. 111, 157 A. 2d 182 (1959). Moreover, when a taking has been effected without the con-

---

[1] The record shows that original entry was made on March 22, 1956. When appellants objected, the employees left, and returned the next week after an agreement had been reached between the appellants and the appellee's solicitor.

[2] Preliminary objections were filed to the original petition alleging imprecise information and bar by the statute of limitations. Appellants were permitted to amend this petition and after the amendment, the statute of limitations was once again proffered as a bar to the action.

demnation procedure having been followed, the landowner may petition the court for the appointment of viewers to assess and award damages. *Griggs v. Allegheny County,* 402 Pa. 411, 168 A. 2d 123 (1961), *rev'd on other grounds,* 369 U.S. 84 (1962).

Appellee, in support of its preliminary objections, refers us to Act of April 3, 1956, P. L. 1366, §3, 26 P.S. §153, which provides: "In any case whereby the exercise of the power of eminent domain a political subdivision or authority has become entitled to the possession of private land, property or material for any interest therein prior to the effective date of this act, a petition for the appointment of viewers for the assessment of damages may be filed or an action for damages may be brought within six years from such date and not thereafter. All claims shall be forever barred after the expiration of the period of six years." This section, according to appellee, bars this action because the prescribed period would have expired in April of 1962. Language in another section of that act, however, provides that "[t]his act shall not apply to petitions for the appointment of viewers for the assessment of damages or to actions for damages as the result of the exercise of the power of eminent domain by any authority unless (1) a copy of the resolution by which such authority exercises its power of eminent domain is personally served on the owner of the affected property, or (2) if the owner cannot be served personally, service of a copy of the resolution is made on the owner by registered or other mail service . . . or (3) if the owner cannot be served personally or by mail as herein provided, unless the resolution is published at least one time in a newspaper of general circulation in the county in which the affected property is located and at least one time in the legal periodical, if any, of such county." Act of April 3, 1956, P. L. 1366, §2, 26 P.S. §152. This

language, while appearing in §2 of the Act, also specifically applies to §3. Since there was never any personal, mailed or published service, or even an appropriate resolution, appellants contend that no statute of limitations applies and that this case is controlled by *Brankin v. Philadelphia,* 286 Pa. 331, 133 A. 563 (1926) which held that no statute of limitations bars a landowner's right to compensation for condemnation.[3] We do not agree.

First of all, there is a strong argument that the provisions of §2 of the Act, 26 P.S. §152 requiring service or publication of a condemnation resolution are for the purpose of providing notice of a proposed change to the property of a landowner so that he may vigilantly protect his rights in the manner prescribed by law. But here the City entered onto Appellants' land, with his actual knowledge and acquiescence. Appellants knew of the proposed change and sat by to its consummation. Six years would be ample time in which to assert a claim for whatever loss they may have felt to be theirs. It is not necessary, however, for us to so conclude in disposing of this case.

The facts are that the value of appellants' land was diminished by the City's acts and they have never been justly compensated. But allowing appellants the benefit of every possible doubt and sympathy and assuming, without deciding, that lack of service lifted them out of the stricture of the application of the statute of limitations, this claim must be barred under operation limitation period of the 1964 Eminent Domain Code.[4]

Section 502(e) of the Code, 26 P.S. §1-502(e) authorizes a condemnee to file a petition for the appoint-

---

[3] *Brankin* was decided at a time when no statute of limitations of any type in condemnation proceedings had been enacted.

[4] Act of June 22, 1964, P. L. 84, Art. V, §524, 26 P.S. §1-524.

ment of viewers in a de facto condemnation.[5] Section 524 of the Code, 26 P.S. §1-524 provides: "A petition for the appointment of viewers for the assessment of damages for a condemnation or compensable injury may not be filed after the expiration of six years from the date on which the condemnor made payment in accordance with section 407(a) or (b) of this Act when the property or any part thereof has been taken, or from the date of injury where the property has been injured but no part thereof has been taken . . . ."

Assuming, for the benefit of appellants, that the 1956 statute of limitations was not applicable and that the institution of proceedings was not barred by the running of any limitation period, the Eminent Domain Code became applicable to this proceeding as of the date of its enactment, June 22, 1964. *Upper Montgomery Joint Authority v. Yerk,* 1 Pa. Commonwealth Ct. 269, 274 A. 2d 212 (1971).

Even were we to use the date of the enactment of the Code, June 22, 1964, as the starting point, *see Yerk, supra,* the petition herein is barred by the expiration of the limitations period (June 22, 1970) since it was not filed until November 5, 1971.

It is not for us to determine whether appellants should have proceeded in Trespass, Assumpsit, Ejectment or in any other form of action. This is a proceeding in Condemnation and the cause of appellants is barred by the statute of limitations.

Appellants here have failed to utilize the protection afforded them by legislative direction. Their procrastination or lack of vigilance is their undoing. As written in *Ulakovic v. Metropolitan Life Insurance Co.,* 339

---

[5] For a discussion of de facto condemnations *see Central Bucks Joint School Building Authority v. Rawls,* 8 Pa. Commonwealth Ct. 491, 303 A. 2d 863 (1973) ; *Commonwealth's Crosstown Expressway Appeal,* 3 Pa. Commonwealth Ct. 1, 281 A. 2d 909 (1971).

Pa. 571, 576, 16 A. 2d 41, 43 (1940), "[t]hese and similar legislative enactments are expressive of the feeling of mankind that where there are wrongs to be redressed, they should be redressed without unreasonable delay, and where there are rights to be enforced, they should be enforced without unreasonable delay."

Affirmed.

___

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent for the reason that the record in this case discloses (and the defendants frankly admit) that none of the conditions precedent, as statutorily required for the running of the statutes of limitations, has occurred. Therefore there is nothing in this record or in the law to preclude these plaintiffs from receiving payment for the improper taking of the plaintiffs' property.

There is hardly any more deep-seated principle in the common law than that the sovereign may not take private property for public use without compensation. Protection of a citizen's rights to ownership in property has been expressed in every constitution of this Commonwealth to the present time. The Pennsylvania Constitution of 1968, in Article I, Section 10, says in pertinent part: "[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being *first* made or secured." (Emphasis added.) In Article X, Section 4 of that same Pennsylvania Constitution, we find: "Municipal and other corporations invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements and compensation shall be paid or secured *before* the taking, injury or destruction." (Emphasis added.)

The General Assembly of Pennsylvania with the intent and purpose of carrying out the mandate of these constitutional provisions (past and present) passed the Eminent Domain Code (Code), Act of June 22, 1964, Spec. Sess., P. L. 84, as amended, 26 P.S. §§1-101 et seq., wherein the rights of citizens are set forth. In Section 201(1) of the Code, 26 P.S. §1-201(1), we find: "'Condemn' means to take, injure or destroy private property by *authority of law* for a public purpose." (Emphasis added.) Subsection 3 of Section 201 reads: "'Condemnor' means the acquiring agency, including the Commonwealth of Pennsylvania, taking, injuring or destroying private property *under authority of law* for a public purpose." (Emphasis added.)

I would first determine, under the facts, whether plaintiff's property has been condemned, and whether there exists a condemnor in this case. Because we are ruling in this appeal on the lower court's sustaining of preliminary objections, we must accept all the properly pleaded averments of fact contained in the amended petition. In that petition, one finds and must accept as factual that:

1. There has been no declaration of taking.

2. There has been no eminent domain proceedings initiated by the defendants of any kind or nature.

3. No bond in any sum has ever been tendered.

4. No copy of any resolution has ever been served on the plaintiffs.

5. There has been no payment made or tendered.

6. The defendants entered upon the plaintiffs' land without any right (by condemnation proceedings or otherwise), constructed a deep ditch on plaintiffs' property, and proceeded to lay water lines.

In accepting these pleaded facts, I can only conclude that the defendants in this case are nothing more than trespassers on plaintiffs' land. Defendants occu-

pied plaintiffs' land under no color of right. The letter which the defendants rely upon so strenuously cannot be tortured into an agreement, by any stretch of the imagination.

The majority affirms the court below on the basis of the statute of limitations provisions of the 1964 Eminent Domain Code. In Section 302 of that Code, 26 P.S. §1-302, we find: "This act shall take effect immediately upon approval, *and shall apply to all condemnations effected thereafter,* except the provisions of Article IV, which shall not take effect until September 1, 1964 and shall apply to all condemnations *effected thereafter.* The provisions of Articles V and VII shall also apply to all steps taken subsequent to the effective date of this act in all condemnation proceedings in which the condemnation was effected prior to the effective date of this act." (Emphasis added.) The question immediately arises: when was any condemnation effected under the facts of this case? There was no condemnation. Further, under the provisions of 26 P.S. §1-201 (1) (quoted above), when was the plaintiffs' property ever condemned under "authority of law?" Could it possibly be argued that government effectuates a condemnation by boldly and without authority taking a citizen's property? I think not. At this point in time, the defendants are trespassers, and until either the condemnor or the condemnee commences proceedings under the applicable eminent domain statute, condemnation has not been effected. Under the facts of this case it only became a condemnation matter when these property owners filed their Petition.

If this case is to turn on the statute of limitations found in the 1964 Code, then the conditions precedent, as set forth in the statute, must be found in the record before the property owner can be precluded from his constitutional rights. Any statute which restricts or

constricts a constitutional right must be strictly construed. *See McCafferty v. Guyer,* 59 Pa. 109, 111 (1868) wherein the Court stated: "A right conferred by the Constitution is beyond the reach of legislative interference. If it were not so, there would be nothing stable; there would be no security for any right." The statute of limitations section of the 1964 Code is found in Section 524, 26 P.S. §1-524. It reads as follows: "A petition for the appointment of viewers for the assessment of damages for a condemnation or compensable injury may not be filed after the expiration of *six years from the date on which the condemnor made payment* in accordance with section 407(a) or (b) of this act where the property or any part thereof has been taken, or from the date of injury where the property has been injured but no part thereof has been taken. If such petition is not filed before the expiration of such period, such payment shall be considered to be in full satisfaction of the damages." (Emphasis added.) The second sentence of Section 524 makes it obvious to me that the condition precedent, before the running of the six-year period, is that payment be made or tendered to the property owner. No such payment nor tender was made in this case. I repeat that we are ruling on preliminary objections, and we must accept as true the properly pleaded fact that no payment or tender has been made. How is a condemnation required to be commenced? Section 402 provides the answer, 26 P.S. §1-402. There we find that: "Condemnation . . . shall be effected *only* by the filing in court of a declaration of taking, with such security as may be required. . . ." (Emphasis added.) Once again, the amended petition of the plaintiffs avers as a fact that no such declaration or security was ever filed. Therefore, in the words of the statute itself, the condemnation has not become "effected." *Pane v. Department of Highways,* 422 Pa.

489, 222 A. 2d 913 (1966): "Under the Code, a condemnation which involves the 'taking' of property is 'effected' only by the filing in court of a 'declaration of taking' with the required security; Code, supra, §402, 26 P.S. §1-402." 422 Pa. at 496, 222 A. 2d at 916. The court went on to say if there is merely an "injury" to the property, the time of injury is "when the physical change is begun. . . ." 422 Pa. at 497, 222 A. 2d at 917. Injury here means damage caused by off-property condemnation vis-a-vis a taking.

Section 902 of the 1964 Code, 26 P.S. §1-902, repeals absolutely the statute of limitations provisions of the 1956 (Eminent Domain) Code. I agree with the majority that the 1964 Code is applicable for the reason that no condemnation was effected under the 1956 Code by virtue of the fact that Section 3 of that Code, 26 P.S. §153, provides that the six-year statute of limitations does not run until after the condemnor is "entitled to possession of private land." This Court, in the case of *Upper Montgomery Joint Authority v. Yerk*, 1 Pa. Commonwealth Ct. 269, 274 A. 2d 212 (1971) made it quite clear that these statute of limitation sections of the various eminent domain codes are procedural rather than substantive; and therefore, they may be applied retroactively. However, this principle is not applicable if there was no condemnation. In *Weigand Appeal*, 214 Pa. Superior Ct. 371, 257 A. 2d 627 (1969), the Court clearly provides that, if the statute of limitations has run under a prior eminent domain code, the rights of the landowner are not resurrected by the passage of a new eminent domain code. I find *Weigand* inapposite because the condition precedent to the running of the statute of limitations of the 1956 Code required of the condemnor (namely, entitlement to possession) is not factually supported by the record in this case.

By contrast, the lower court here decided this case on Section 2 of the 1956 Code, 26 P.S. §152, for the reason that the plaintiffs had "notice of the taking." I reiterate that Section 2 states that the statute of limitations begins to run from the date when the condemnor "became entitled to possession of the land" and not solely on notice. Section 2 specifically sets forth additional conditions precedent, such as (1) a copy of the resolution being personally served on the owner; (2) if not personally served, then by registered mail; and (3) if not personally served or served by mail, then advertised. None of these conditions is found in the record of this case. Therefore, the statute of limitations under the 1956 (Eminent Domain) Code could not have run against these plaintiffs.

From my point of view, the Constitution establishes a specific right in the citizen, and a specific restriction on government. I can find no inference in the Constitution that government can expropriate a citizen's property after the passage of six years from an unlawful taking. I can find restrictions on the citizen by virtue of statutes of limitation only if the governmental condemnor has strictly followed every provision of whatever eminent domain code is applicable to a given situation. The condemnors in this case could have set the wheels in motion for the running of the statute of limitations. They did not. This particular constitutional right is too precious to be shunted aside for reasons of "procrastination" or "lack of vigilance" on the part of the citizen property owner. If government had no means at its disposal to properly condemn this property, then perhaps I could understand the sustaining of these condemnors' preliminary objection. The fact is, however, that these condemnors had the responsibility and the duty to proceed in a lawful way. I conclude that the statute of limitations provisions did not com-

mence to run at all, because the condemnors did nothing after they unlawfully expropriated the plaintiffs' property. I would reverse the court below, overrule the preliminary objections, and order the court below to proceed with the appointment of viewers.

Judge BLATT joins in this dissenting opinion.