573 A.2d 668

The **PENNSYLVANIA DAIRY HERD IMPROVEMENT ASSOCIATION, Appellant,**

v.

**Bernard WAGNER, Appellee.**

**Bernard WAGNER, Appellant,**

v.

The **PENNSYLVANIA DAIRY HERD IMPROVEMENT ASSOCIATION, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1989.

Decided April 20, 1990.

Lee G. Nollen, with him, George M. Schroeck, Schroeck & Segel, P.C., Erie, for appellant/cross appellee, Bernard Wagner.

Robert F. Claraval, Adler, Jameson & Claraval, with him, Gregory R. Neuhauser and Thomas P. Brogan, Malatesta, Hawke & McKeon, Harrisburg, for appellee/cross appellant, the Pennsylvania Dairy Herd Improvement Ass'n.

Before CRAIG and BARRY, JJ., and BARBIERI, Senior Judge.

## OPINION

BARRY, Judge.

These are cross-appeals from an order of the Court of Common Pleas of Centre County which declared null and void the five year suspension of petitioner, Bernard Wagner (Wagner), from membership in the Pennsylvania Dairy Herd Improvement Association (Pa. DHIA), but which upheld Pa. DHIA's cancellation of Wagner's dairy herd's

lactation records beginning January 1, 1982. We reverse [1] that portion of the trial court's order declaring the suspension null and void and affirm that portion of the trial court's order upholding the cancellation of the lactation records.

The Pa. DHIA is a nonprofit corporation which consists of approximately 6,000 Pennsylvania dairy farmers and which is incorporated under the laws of Pennsylvania. The Pa. DHIA regularly tests the milk production of its members' herds and, on the basis of these tests, compiles records of a cow's milk production. The production records produced by Pa. DHIA are then relied upon by its members and others interested in the improvement, breeding and sale/purchase of the animals. Until his suspension, Wagner was a voluntary member of the Pa. DHIA.

In 1986, the Pa. DHIA conducted an investigation into Wagner's farming practices. This investigation focused on Wagner's herd's milk production records. Charges against Wagner were filed on March 24, 1987, and a hearing on the charges was held on June 29, 1987 and July 24, 1987 [2]. The hearing resulted in Wagner being found guilty by the hearing board. As a result of the finding of guilt, the Pa. DHIA suspended Wagner from membership for a period of five years and decertified his herd's lactation records beginning January 1, 1982.

The Pa. DHIA has duly adopted bylaws governing the operation of the association. The bylaws in effect on March 24, 1987, were those as amended through January 6, 1986. The bylaws were amended on June 15, 1987, prior to the hearing on the violations but subsequent to the filing of

1. We have jurisdiction in this matter pursuant to Section 762(a)(5) of the Judicial Code, 42 Pa.C.S. § 762(a)(5), which, in part, confers upon the Commonwealth Court jurisdiction in actions relating to corporations not-for-profit arising under Title 15. In turn, Section 7767 of the Nonprofit Corporation Law of 1972, 15 Pa.C.S. § 7767, *renumbered to* 15 Pa.C.S. § 5766, *as amended,* requires that membership in a corporation not-for-profit shall be terminated in accordance with the corporation's bylaws.

2. The hearing originally was scheduled for May 1, 1987, but had to be rescheduled until June 29, 1987, because Wagner was involved in an automobile accident and was unable to attend the May 1, 1987, hearing.

charges against Wagner. The bylaws as amended through January 6, 1986, provided that a member might be expelled by the Board of Directors of the member's county or local association or by the delegate body of the Pa. DHIA upon an appeal after notice and a hearing. The amendments to the bylaws adopted June 16, 1987, changed the hearing procedure. The newly amended bylaws provide for a hearing to be held before a five member hearing board with a right of a de novo appeal to the Board of Directors.

By letter dated March 24, 1987, Wagner was notified that charges were being filed against him. The letter indicated that a hearing board appointed by the president of the Pa. DHIA would hold a hearing on May 1, 1987. On April 22, 1987, Wagner filed written objections to the proposed proceedings alleging inadequate notice and irregularity of the procedures in violation of the Pa. DHIA bylaws. The hearing ultimately was held in accordance with the bylaws as adopted on June 16, 1987 and Wagner was found guilty. On appeal to the Board of Directors, the hearing board was affirmed.

Thereafter, Wagner filed an appeal to the Court of Common Pleas of Centre County requesting that the actions of the Pa. DHIA be declared null and void because Pa. DHIA had failed to follow the bylaws in effect at the time the charges were filed against Wagner. The trial court agreed with Wagner's contention that, because the full Board of Directors did not *hear*[3] Wagner's case, he was denied due process with respect to the suspension of his membership. On the issue of the cancellation of the lactation records, however, the trial court found that "the decertification of a member's records is an administrative action requiring only fundamental fairness. The evidence indicates that [Wagner] received fundamental fairness in the decertification of his records". Slip op. at 3 (September 8, 1988).

3. The trial court acknowledged that the Board of Directors conducted a de novo review of the evidence as required by the bylaws as adopted on June 15, 1987. This review, however, did not consist of first hand observation of the witnesses. Rather, the review was limited to review of the evidence as recorded at the hearing.

The trial court's order, of course, did not satisfy either party. Consequently, Wagner appealed the trial court's order with regard to the decertification of the lactation records [4] and the Pa. DHIA cross-appealed the trial court's order regarding the invalidity of the suspension of Wagner's membership in the Pa. DHIA.

The crux of the trial court's ruling on the suspension is that the Pa. DHIA unfairly changed horses in mid-stream by switching the tribunal from the Board of Directors to a hearing board (with the right of a de novo appeal to the Board of Directors). We disagree. Our difference of opinion stems from our finding that the change in the bylaws was procedural [5].

Pennsylvania courts have long upheld the propriety of applying procedural rules to pending actions. The analogous case of *Universal Cyclops Steel Corporation v. Krawczynski*, 9 Pa.Commonwealth Ct. 176, 305 A.2d 757 (1973), *application for allocatur denied* (1973), illustrates this principle. In that case, a worker was allegedly injured in 1966 and filed a claim petition seeking benefits pursuant to The Pennsylvania Workmen's Compensation Act (Act) [6]. In April of 1971, the workmen's compensation referee hearing the worker's claim petition handed down an adjudication denying benefits to the worker. The worker then appealed to the Workmen's Compensation Appeal Board (Board), which took no additional evidence, but which, on October 26, 1972, reversed the order of the referee and awarded benefits to the worker. Subsequent to the decision of the referee but prior to the order of the Board, the Pennsylvania legislature amended the Act with language which we interpreted to make the referee the ultimate fact finder in workmen's compensation proceedings in which the Board does not take additional evidence. Prior to this amendment, the Board was the ultimate fact finder. Consequently, we

4. Wagner does not argue that the evidence is insufficient to support his suspension from membership in the Pa. DHIA.

5. The trial court did not engage in a substantive/procedural analysis.

6. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1066.

were confronted with the issue of whether this amendment was applicable to the *Universal Cyclops* case. On this issue we stated:

> The general rule on this subject has been stated as follows: 'Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But, where it concerns merely the mode of procedure, it is applied, as of course, to litigation existing at the time of its passage....' *Kuca v. Lehigh Valley Coal Co.*, 268 Pa. 163, 166, 110 A. 731, 732 (1920). *See Misitis v. Steel City Piping Company*, 441 Pa. 339, 272 A.2d 883 (1971); *Smith v. Fenner*, 399 Pa. 633, 161 A.2d 150 (1963); *Pope v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.*, 176 Pa.Super. 276, 107 A.2d 191 (1954). 'A procedural statute may be applied to litigation instituted prior to its enactment *but not completed.*' (Emphasis in original.) *Wiegand Appeal*, 214 Pa.Super. 371, 374, 257 A.2d 627, 629 (1969). *See Upper Montgomery Joint Authority v. Yerk*, 1 Pa.Cmwlth. 269, 274 A.2d 212 (1971).
>
> A change in the Board's scope of review has been held to be a procedural matter and applicable, therefore, to litigation then in progress. *Seneca v. Yale & Towne Mfg. Co.*, 142 Pa.Super. 470, 16 A.2d 754 (1941). We believe, therefore, that the Board's scope of review in cases, such as here, which it decides after May 1, 1972, should be established by Act No. 61 [the amendment to the Act].

*Universal Cyclops*, 9 Pa.Commonwealth Ct. at 183, 305 A.2d at 761–62.

■ We agree that Wagner had a substantive right to a hearing which comported with due process. However, it does not follow that a change in the bylaws necessarily infringed upon that substantive right. As long as the amended procedure afforded the process due, Wagner cannot complain that the application of the amended procedure was improper. We are of the opinion that the June 15, 1987, amendments to the bylaws were procedural in nature, that the procedure authorized by those amendments afford-

ed due process and that it was proper to apply the amended procedure to this action.[7]

Our conclusion that the trial court erred with regard to the suspension issue does not mean that it also erred concerning the lactation records. The opposite is true. Wagner contends that the trial court incorrectly concluded that the cancellation of the lactation records of a member of the Pa. DHIA is an administrative action requiring only fundamental fairness and not due process. In light of our conclusion that the procedure utilized afforded due process, it does not matter that the trial court classified the cancellation of the lactation records as an administrative action [8]. Wagner was afforded due process in any event.

## ORDER

NOW, April 20, 1990, the order of the Court of Common Pleas of Centre County, dated September 1, 1988, at No. 1987–2390, is reversed in part and affirmed in part. We reverse that portion of the trial court's order which declared null and void the five year suspension of Bernard Wagner from membership in the Pennsylvania Dairy Herd Improvement Association and we reinstate the suspension. We affirm that portion of the trial court's order affirming the cancellation of Bernard Wagner's dairy herd's lactation records beginning January 1, 1982.

7. Wagner also argues that the letter from the Pa. DHIA informing him of the charges did not afford him the notice which was due. On this issue, we agree with Judge Mencer, who ruled upon the issue in a memorandum opinion filed in a companion case in federal court. Judge Mencer stated:

We do not deem here that the notice of charges given by the Pa. DHIA was inadequate, although admittedly sparse, and clearly Bernard Wagner had ample notice of the time and place for a hearing relative to the charges and an opportunity to present witnesses and evidence on his behalf and to cross-examine witnesses whose testimony was adverse to his position.

*Wagner v. The Pennsylvania Dairy Herd Improvement Association, Inc.,* 87 Erie 172 (August 13, 1987).

8. We express no opinion as to whether this classification is correct.